UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN LOVE LUNDY, | : | **3:20-CV-01898** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Chief Magistrate Judge Schwab) |
| | : | |
| POCONO MOUNTAIN REGIONAL | : | |
| POLICE DEPARTMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER

December 17, 2020

## I. Introduction.

The plaintiff, Steven Love Lundy, asserts claims based on his arrest and state criminal prosecution. After screening the complaint, we conclude that the complaint fails to state a claim upon which relief can be granted. We will, however, grant Lundy leave to file an amended complaint.

## II. Background.

Lundy, a prisoner at the State Correctional Institution Frackville, commenced this action *pro se* on October 15, 2020, by filing a complaint. He subsequently paid the filing fee for this action.

Referring to himself as "Divine: Rose-El," Lundy alleges that he is a Moorish American National. *Doc. 1* at 1.  He alleges that on November 17, 2017, Corporal Officer Matthew Nero and Detective Sergeant Kenneth Lenning, with the Pocono Mountain Regional Police Department, arrested him on his front porch. *Id.* According to Lundy, as Nero was shackling him and escorting him to a police car, he watched Lenning enter his home without a warrant and without consent. *Id.*

Lundy was subsequently charged, and an order dated March 21, 2019 (which Lundy submitted as an exhibit to his complaint), provides that Lundy pleaded nolo contendere to Strangulation, a felony of the second degree, and was sentenced by Judge Zulick of the Court of Common Pleas of Monroe County to 21 to 60 months imprisonment. *Doc. 1* at 1, 9.  According to Lundy, during the criminal proceedings, he was "trafficked" to and from court, he was denied affordable bail, and he was coerced into signing a plea agreement in order to help his wife. *Id.* at 1, 2.  Lundy suggests that although he signed the plea agreement "In Propria Persona," an assistant district attorney stated that she would be able to prove that he was indeed Steven Love Lundy. *Id.* at 2.  He contends that he was deprived of his "inherent rights as a Moorish-American National." *Id.* at 1.

Lundy further asserts that he is being held at the state correctional institution in the name of Steven Love Lundy, that he has been held 12 months beyond the "VOID contract" that he signed, and that the Pennsylvania Board of Probation and

2

Parole has denied him parole because he refused to accept personal responsibility in the name of Steven Love Lundy. *Id.*  Lundy also alleges that Monroe County Correctional Facility, in collusion with the Monroe County District Attorney's Office, confiscated and interfered with his incoming and outgoing mail.

In addition to the above allegations, the complaint contains references to kidnapping, dehumanization, human trafficking, slavery, and genocide, apparently tied to Lundy's assertions regarding being a Moorish American National. *Id.* at 1–3.  Some of the exhibits attached to the complaint, such as a UCC Financing Statement and documents related to a purported trust, *see doc. 1* at 4–8, are also related to Lundy's contentions regarding being a Moorish American National.

The caption of the complaint lists the Commonwealth of Pennsylvania as a defendant. *Id.* at 1.  The body of the complaint lists numerous other actors, but it is not clear whether Lundy is attempting to name all those mentioned as defendants. At one point in his complaint, Lundy does list the following individuals: Corporal Officer Matthew Nero, Detective Sergeant Kenneth Lenning, Detective Corporal Lucas David Bray, Judge Jonathan Mark, Judge Arthur L. Zulick, District Attorney E. David Christine, Assistant District Attorney Michael Mancuso, and Assistant District Attorney Catherine Theresa Pirolli. *Id.* at 3.  Although not entirely clear, Lundy may intend to name these individuals as defendants.

As relief, and under a section of the complaint titled "MANDAMUS," Lundy seeks release from confinement, expungement of his record, release of his property, release of all bonds, "Equitable Compensation," Five Hundred Million dollars, and punitive damages. *Id*.  Lundy signed the complaint as "Divine: Rose-El" as "Authorized Representative of STEVEN LOVE LUNDY." *Id*. at 3.

On November 3, 2020, Lundy filed a document in which he requests to amend the name on his complaint to "Divine: Rose-EL, Ex Rel: STEVEN LOVE LUNDY." *Doc. 4* at 1.  He also requests to that the defendant be amended to "THE COMMONWEALTH OF PENNSYLVANIA, et al., in which all agents, actors, and representative were given notice of their intentional wrong-doings." *Id*.  The Clerk of Court docketed this document as a motion to amend the complaint.  This document does not clarify who all Lundy intends to be named as defendants.

On November 27, 2020, Lundy filed a document in which he states that prison officials are denying him his required diet. *Doc. 6* at 1.  He attaches a document from the Pennsylvania Department of Corrections denying his request for a religious diet. *Id*. at 2.  Lundy requests to make the Department of Corrections' document an exhibit to his complaint. *Id*. at 1.  The Clerk of Court docketed the document Lundy filed on November 27th as a supplement to his complaint.

4

For the reasons discussed below, we conclude that the complaint fails to state a claim upon which relief can be granted.

### III.  Screening of Prisoner Complaints—Standard of Review.

The court may *sua sponte* dismiss an action brought by a prisoner under federal law complaining about prison conditions if, among other reasons, the action "fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1). This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009).  The statement required

by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  Discussion.

### A.  The complaint fails to state a claim upon which relief can be granted.

The complaint is not clear.  It does not comply with the pleading requirement of Fed. R. Civ. P. 8.[1]

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). "This already liberal standard is 'even more pronounced' where a plaintiff files the complaint without the assistance of counsel." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson*, 551 U.S. at 94).  "[A] court must make reasonable allowances to protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Id.*  Thus, "[c]ourts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints." *Id.*

Liberally construing Lundy's complaint, we nevertheless conclude that the complaint fails to comply with Fed. R. Civ. P. 8, which requires, among other things, that a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be

---

[1] The complaint also does not contain a caption listing the defendants as required by Fed. R. Civ. P. 10(a).  Nor does it contain numbered paragraphs as required by Fed. R. Civ. P. 10(b).  And although doing so would promote clarity, each claim is not stated in a separate count as required by Fed. R. Civ. P. 10(b).

simple, concise, and direct." Fed. R. Civ. P. 8(a)(1), 8(a)(2), 8(d)(1).  Lundy's

complaint does not contain a short and plain statement of the court's jurisdiction.

Moreover, his complaint does not contain a short and plain statement of his claims.

Rather than containing simple, concise, and direct allegations, the complaint is

littered with extraneous legal conclusions relating to kidnapping, slavery, and

human trafficking.[2]  "Fundamentally, Rule 8 requires that a complaint provide fair

notice of 'what the . . . claim is and the grounds upon which it rests." *Garrett*, 938

F.3d at 92 (quoting *Erickson*, 551 U.S. at 93).  Here, the complaint does not

provide fair notice of what Lundy's claims are.  In fact, it is not clear who the

defendants are, what claims Lundy is making against which defendants, or what

relief he is seeking against which defendants.  Accordingly, the complaint fails to

state a claim upon which relief can be granted.

Before dismissing a complaint under a screening provision, the court must

grant the plaintiff leave to amend his complaint unless amendment would be

---

[2]  Given the allegations regarding kidnapping, slavery, and human trafficking, it
may be that Lundy is suggesting that based on his alleged status as a Moorish
American National, the state court did not have jurisdiction over him in the
criminal proceedings.  "This, and similar claims based on an alleged status as a
'Moorish American' have been consistently rejected by courts." *Camp v. Harper*,
No. CV 20-648, 2020 WL 3104026, at *2 (W.D. Pa. June 11, 2020) (citing cases).
"Any claims or arguments raised by Plaintiff which are based on his membership
in the Moorish American Nation are frivolous." *Hampton v. City of Durham*, No.
1:10-CV-706, 2010 WL 3785538, at *3 (M.D.N.C. Sept. 22, 2010).

inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  Here, in light of the liberal-amendment standard, we will grant Lundy an opportunity to correct the deficiencies noted above.  Thus, the court will grant Lundy leave to file an amended complaint.

We will briefly discuss some additional issues with respect to Lundy's complaint that Lundy should be aware of should he elect to file an amended complaint.

### B.  Federal Rule of Civil Procedure 20.

Federal Rule of Civil Procedure 20 governs permissive joinder of parties. "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).  Still, the liberal policy of joinder under Rule 20 does not mean that unrelated claims and defendants can be joined in one action.  Rather, the requirements of Rule 20(a)(2) regarding joinder of defendants must be satisfied, and that Rule provides that persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all

defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  If Lundy elects to file

an amended complaint, he must comply with Rule 20.

### C.  Lundy is not entitled to a writ of mandamus.

Lundy titled his complaint in part as a petition for a writ of mandamus.  28

U.S.C. § 1361 provides that "district courts shall have original jurisdiction of any

action in the nature of mandamus to compel an officer or employee of the United

States or any agency thereof to perform a duty owed to the plaintiff."  Lundy is

not, however, seeking mandamus relief to compel a federal official or employee to

perform a duty.  Rather, he is seeking mandamus relief as to state entities and

officials.  But this court does not have jurisdiction under 28 U.S.C. § 1361 to issue

a mandamus order to state officials. *In re Woodall*, 578 F. App'x 73, 74 (3d Cir.

2014) ("Woodall asks us to exercise our mandamus jurisdiction to direct a *state*

agency to perform its duties in accordance with his wishes.  We do not have the

authority to grant that request."); *In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963)

(holding that the district court did not have jurisdiction "to issue a writ of

mandamus compelling action by a state official").

This court does have authority under the All Writs Act to issue a writ in the

nature of mandamus when necessary or appropriate in aid of its jurisdiction and

agreeable to the usages and principles of law. 28 U.S.C. § 1651.  But the All Writs

11

Act does not provide an independent basis for jurisdiction and may be invoked only in aid of jurisdiction already possessed by the court on some other ground. *See Jones v. Lilly,* 37 F.3d 964, 967 (3d Cir. 1994) ("the writ issued must aid the court in the exercise of its jurisdiction").  In this case, issuing a writ of mandamus would not aid the court in the exercise of its jurisdiction.  Accordingly, Lundy is not entitled to a writ of mandamus.

### D.  Lundy cannot seek release from custody in this civil-rights action.

To the extent that Lundy is seeking release from custody, he cannot seek such relief in this action.

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). When a prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500.  "Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction" a civil rights action is appropriate. *Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir. 2002).

To the extent that Lundy is seeking release from prison, he cannot seek such relief in this civil-rights action.  Rather, he can seek such relief only through a petition for a writ of habeas corpus, which generally is appropriate only after a petitioner has exhausted his state remedies.

### E.  42 U.S.C. § 1983 Claims.

To the extent Lundy claims that the defendants violated his constitutional rights, his claims are brought under 42 U.S.C. § 1983.  To aid Lundy should he file an amended complaint, we will briefly set forth some general standards applicable to § 1983 claims.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).  "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)).  To state a claim under §1983, the plaintiff must allege a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. Thus, respondeat superior cannot form the basis of liability. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "[A] plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

There are also several immunities that may bar some of the claims it appears that Lundy may make. We briefly address those below.

### 1.  The Eleventh Amendment.

The Eleventh Amendment bars any 42 U.S.C. § 1983 claims against the Commonwealth of Pennsylvania.

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United States Constitution, which immunizes States from suits brought in federal court by

both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "to stand not so much for what it says, but for the presupposition . . . which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is that each state is a sovereign entity in our federal system, and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.* Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).

A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999). But the Commonwealth of Pennsylvania has not waived its Eleventh Amendment

immunity. *See* 42 Pa. C.S.A. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). And "Congress did not abrogate Eleventh Amendment immunity via § 1983." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

Thus, any 42 U.S.C. § 1983 claims against the Commonwealth of Pennsylvania are barred by the Eleventh Amendment.

### 2. Judicial Immunity.

"The text of § 1983 does not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020). "Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Delaware*, 465 F.3d 129, 134–35 (3d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135. Although most public officials are entitled to only qualified immunity, public officials who perform '"special functions"' are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)).

"[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine whether absolute or qualified immunity applies. *Forrester v. White,* 484 U.S. 219, 224 (1988). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. *Id.* "The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000). The Court has described the reasons for recognizing judicial immunity as follows:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have . . . . [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it

> would manifestly detract from independent and impartial
> adjudication.

*Forrester*, 484 U.S. at 226–27 (citations omitted).

A two-part inquiry is used to determine whether judicial immunity is applicable. *Gallas,* 211 F.3d at 768.  First, because immunity applies only to actions taken in a judge's judicial capacity, a determination must be made whether the challenged actions of the judge were taken in his or her judicial capacity. *Id.* The relevant factors "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" *Id.* at 768 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  "Our task is to 'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* (quoting *Forrester,* 484 U.S. at 227).

"Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*  In this regard, "we must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Id.* at 769 (quoting *Stump*, 435 U.S. at 356 n.6).  The Supreme Court has explained that distinction:

"Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.  But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend."

*Stump*, 435 U.S. at 356 n.6 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351–52

(1871)).  "Generally, therefore, 'where a court has some subject matter jurisdiction,

there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*,

208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell,* 105 F.3d 1111,

1122 (6th Cir.1997)); *see also Gallas*, 211 F.3d at 771 2000) (holding that "a judge

does not act in the clear absence of all jurisdiction when the judge enters an order

at least colorably within the jurisdiction of her court even though a court rule or

other procedural constraint required another judge to act in the matter").

Judicial immunity shields a judge from liability for judicial acts even if those

acts were taken in error, if they were done maliciously, if they were in excess of

the judge's authority, if the judge committed grave procedural errors, or if the

judge's actions were unfair or controversial. *Gallas,* 211 F.3d at 769.  A judge will

be subject to liability only when he or she has acted in the clear absence of all

jurisdiction. *Id.*  "In sum, our analysis must focus on the general nature of the

challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Id.*

Thus, judicial immunity bars any claims for damages against the judges involved in Lundy's criminal case provided that the judges acted in a judicial capacity and they did not act in the complete absence of jurisdiction.

### 3. Prosecutorial Immunity.

A functional approach is also used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008). "That functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159–60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Thus, for example, a prosecutor is entitled to absolute immunity from a claim based on a prosecutor "initiating a prosecution and in presenting the State's case."

*Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  A prosecutor is also entitled to absolute immunity for the preparation and filing of charging documents and arrest warrants. *Kalina,* 522 U.S. at 129.  Absolute immunity does not, however, apply "'to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.'" *Weimer v. Cty. of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020) (quoting *Odd*, 538 F.3d at 208).

Thus, prosecutorial immunity bars any claims for damages against the prosecutors involved in Lundy's criminal case provided that the prosecutors were acting in a judicial or quasi-judicial capacity.


## V.  Order.

Based on the foregoing, **IT IS ORDERED** that Lundy is **GRANTED** leave to file an amended complaint within 28 days of the date of this Order.[3]  **IT IS**

---

[3]  Any amended complaint must be titled as an amended complaint and must contain the docket number of this case. Fed. R. Civ. P. 10(a). Lundy "is advised that any amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  "It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Id*.  "Also in general, an amended pleading—like [any] amended complaint here—supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017).  In other words, if an amended complaint is filed, the original complaint will have no role in the future litigation of this case.  Any amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure, including the requirements that the complaint contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3).  Further, "[e]ach

**FURTHER ORDERED** that Lundy's motion to amend (*doc. 4*) is **DENIED AS MOOT** given that we are granting Lundy leave to file an amended complaint that complies with the pleading requirements of the Federal Rules of Civil Procedure.


<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
Chief United States Magistrate Judge

---

allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And to the extent it would promote clarity to do so, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*. Any amended complaint must also comply with Fed. R. Civ. P. 20.